MOEHRING, appellant, *agt.* THAYER, public administrator, &c., respondent.

*Questions discussed.*

1. Whether a married woman, with the consent of her husband, could *by will* dispose of the proceeds of a *policy of insurance* procured by her under the act of 1840, on the life of her husband, for her separate use?

2. Whether such a will can be propounded, admitted to probate, and proved as a last will and testament?

On the 6th day of May, 1840, Isabella Leo Wolf, wife of Joseph Leo Wolf, procured from the New-York Life Insurance and Trust Company a policy of insurance for $5,000 on the life of her husband for five years. The sum insured was to be paid to her executors, administrators and assigns, for her sole use, within sixty days after due notice and proof of the death of her husband; and in case of the death of the said Isabella before the decease of her husband, the amount of insurance was payable to her children for their use, or to their guardian, if under age.

On the 6th day of March, 1841, Mrs. Isabella Leo Wolf made and executed the following instrument:—

" In the event of the within policy, No. 1321, of the New-York Life Insurance Company, becoming payable by said Company, in consequence of the death of my husband, Joseph Leo Wolf, and in the event of my being at the time when the within policy becomes payable not among the living, it is my wish and will, and I do hereby order and direct that the amount insured in said policy, on the life of my husband, shall be paid over to Doctor Golthilf Moehring, in the city of Philadelphia, state of Pennsylvania, in trust to be held by him for my daughter, Mary Jane Leo Wolf, until her being of age; and in the event of her death before coming of age without issue, I hereby order and direct that the whole amount thus held in trust by said Golthilf Moehring shall be divided in equal parts, and shall be paid over to the children of the brothers and sisters of my husband, Joseph Leo Wolf, living at the time when such division shall take effect.

"Given under my hand and seal, in the city of New-York, this sixth day of March, eighteen hundred and forty-one.

"ISABELLA LEO WOLF.

" Witnesses :

"GEORGE LEO WOLF,

"LEWIS LEO WOLF.

"I consent to the above, and ratify the same. New-York, the sixth of March, eighteen hundred and forty-one.

L. S.

"JOSEPH LEO WOLF.

" Witnesses :

"GEORGE LEO WOLF,

"LEWIS LEO WOLF."

A few days after the execution of this writing, Mrs. Leo Wolf, the assured, her husband, Joseph Leo Wolf, and their only child, sailed for Europe in the steamship President, and have never since been heard of; and there is no doubt' that such ship was lost at sea, and all on board perished.

In April, 1842, Geo. F. Allen, as proctor for the appellant, who was the trustee, or executor, named in the instrument propounded as a will, presented a petition to David B. Ogden, Esq., surrogate of the city and county of New-York, stating that the decedent left assets or personal estate in the city and county of New-York; and praying that the instrument propounded might be admitted to probate, and that letters testamentary thereon might be granted. The next of kin of the decedent were duly cited to attend before the surrogate, and the public administrator, having taken out administration on the estate of Joseph Leo Wolf, was also cited; and they resisted the probate of the instrument propounded, upon the ground that a married woman could not, under the provisions of the revised statutes, make a will of personal estate, even with the consent of her husband.

The surrogate sustained the objection, and rejected the instrument propounded as a will upon that ground alone. And the circuit judge of the first circuit, Hon. WM. KENT, upon appeal to him, arrived at the same conclusion.

The CHANCELLOR, on appeal to him, examined the whole case, (1 *Barb. Ch. R.* 264,) and rested his decision on these grounds : that, since the revised statutes, a married woman has no power to make a will of personal property ; and also Mrs. Leo Wolf, not having survived her husband, (no legal presumption that she did,) never had any interest in the insurance money.

Moehring brought appeal to this court.

*Nelson Chase, Attorney, and*
*George Wood & Daniel Lord, Counsel* for appellant.

☞ *D. Lord.*—Surrogate refused to take cognizance or enter upon proof, on the ground that married women could not make a *will.*—On appeal, circuit judge affirmed.—On appeal, chancellor went over whole ground and decided against us. (*Laws of* 1840, *p.* 59.)

*First.* The policy of insurance in question is for the separate use of the wife absolutely, and none but the wife can claim the benefit of it. Being for her separate use, she is to be deemed and considered a *feme sole* in regard to the policy; and the fruits of it may be disposed of by her will; and on her dying intestate, will go to her next of kin, to the exclusion of her husband. (2 *Vesey,* 452.)

*Second.* And it would belong to her without the intervention of trustees. (1 *P. Wms.* 316; 3 *Atkins,* 399; *Comyn's Digest, title Baron & Feme,* D. 1; *Adamson* v. *Adamson,* 19 *Vesey,* 418–19; *Crocker* v. *Whiting,* 10 *Mass.* 306; 7 *Paige Rep.* 1.)

*Third.* The presumption from the face of such a policy is, that the premium was paid out of funds devoted to the separate use of the wife.

*Fourth.* If it be so considered a policy made under the act of 1840, and that the husband, under and in pursuance of that act, advanced the premium, the policy enured to the exclusive separate use of the wife, and not to the benefit of the husband, or any one claiming under him, such as creditors or next of kin.

1. Because the husband and those claiming under him can not claim, inasmuch as no provision in the act or in the policy is made for his or their benefit.

Moehring *agt.* Thayer.

*Fifth.* The policy enures absolutely to the benefit of the wife, and not qualifiedly.

1. Because there is no qualification either in the policy or the statute.

2. The insertion of the first clause of the first section of the act shows it was designed to enure exclusively to her benefit.

3. The last clause of the first section does not operate as a condition restricting the broad general terms of the first clause, but merely points out by way of explanation the course in which the policy will run in a given case.

4. The second section of said act does not restrict the first and leading clause of the first section, but provides for the husband to advance under this act a premium for a policy to enure to the wife for life, and after her death to her children.

5. The last clause of the first section, and the second section of the act are directory and not conditional or restrictive.

☞ Married woman may make disposition of her own estate—testamentary act—her right to make it is incident to the property.—R. S. not intended to reach such a case of sole property of wife.

Such a paper is not proved as a will—we never called this a will, but a testamentary disposition of her property—of which probate courts have always taken cognizance.

Consent of husband will not authorize wife to make a will.— Act of 1840 nothing to do with the case. (2 *Sudgen on Powers,* 22, § 21; 2 *Roper, Husband and Wife,* 88, *note m.*)

Surrogate should take cognizance. (1 *Burr,* 461; *Doug.* 707; 6 *Maddock,* 331; 3 *Atk.* 156; 9 *Ves.* 369; 2 *Br. Ch. Cas.* 391, *note B;* 3 *Ves.* 246; 2 *Atk.* 49.)

Though proved in ecclesiastical court, does not determine the right to the property. (1 *Phil. Eccl. R.* 352; *id.* 254; 1 *Wood. Lec.* 263, *sec.* 16; 2 *J. Ch.* 523; 2 *Wood.* 208, *sec.* 31; 2 *R. S.* 16, §§ 21, 24.)

R. S., when critically examined, meant to leave this matter as it was before.

If a separate estate, power of disposition is implied. (1 *Ves. Jr.* 46; 3 *Br. Ch.* 8; 9 *Ves.* 369; 1 *Vernon,* 244; 2 *do.* 329.

*Jur disponendi.* 2 *Ves. Sr.* 191; 3 *J. Ch.* 523; 17 *J.* 578, fullest examination of question.)

R. S. have not touched *trusts* of *personal* estate.—Interest under policy was her separate equitable estate by the terms of its creation. (2 *Roper's H. & W.* 158; *Clancy. Mar. W.* §§ 262, 271; 1 *Ch. Cas.* 118; 9 *Vin. Ab.* 95; *pl.* 43; 1 *Bro. Ch. C.* 532; 1 *Sim. & Stu.* 487; 19 *Ves.* 416; 3 *P. Wms.* 337—though no trust nor power nor deed—enough that husband consented.)

Separate estate of wife—the legal interest is in the husband, but the equitable interest is in the wife.

Without the act of 1840, these arrangements might be impeached by the creditors of the husband—the object of the act was to get over that difficulty.

Inasmuch as both died at the same time, chancellor says the case is not provided for by the statute. But the policy provides for the case—first part of the policy. Policy is more general than the law.

Wm. G. Sterling, *Attorney,* and
D. Dudley Field, *Counsel* for respondent.

All the persons intended to be benefited by the policy died at the same time.—This controversy is between creditors of husband and relatives of wife.

*First.* The application to the surrogate for the probate was not made by one who had a right to claim it. (2 *R. S.* 60, §§ 24, 25; *Laws of* 1837, 524, §§ 4, 10, 11, 17, *p.* 68, § 67.)

*Second.* There was no proof of the due execution of the instrument propounded as a will. (2 *R. S.* 61, § 26; 3 *Bl. Com.* 498, *History of these instruments; Lovelace Wills,* 267; *Jarmin Wills,* 24; 15 *Ves.* 156.)

*Third.* Whether since the revised statutes a married woman can execute a power of appointment, in the nature of a will, over personal property, held by her as a separate estate, when such power is contained in the instrument creating the estate, is a question which does not arise in the present case. Here there is no such power; on the contrary, the policy, by making the insurance payable to the children in the event of Mrs.

Leo Wolf's not surviving her husband, precludes such an idea. But were there such a power, and were its execution valid in equity, as a testamentary disposition, there is nothing to authorize the instrument being admitted to probate by the surrogate, as a will of personal property, whatever may be the practice of the ecclesiastical courts in England. (2 *R. S.* 56, § 1; 60, § 20.)

*Fourth.* The surrogate's court, as it now exists, is not, as were the court of chancery and the supreme court, a court of general jurisdiction, but a mere creature of the statute; and whatever jurisdiction is claimed for it must be affirmatively shown. Its powers are by no means co-extensive with, or to be deduced from, those of the ecclesiastical courts in England. To authorize a surrogate to admit a paper to probate, it is therefore necessary that the instrument should be such as he is empowered to receive, and that it should have been executed by a person coming within the provisions of the law giving jurisdiction to the officer. (2 *R. S.* 173, § 1; 196, § 1; 220, § 1; *Glynn* v. *Oglander*, 2 *Hagg.* 432; 1 *R. L.* 444; *Rev. Notes*, 3 *R. S.* 679; *Dakin* v. *Hudson*, 6 *Cow.* 221; *Bloom* v. *Burdick*, 1 *Hill*, 130.) No power has been given to the surrogate to receive and admit to probate an instrument purporting to be the will of a married woman. (2 *R. S.* 56, § 1; 60, § 21, 23, 26, *p.* 61, § 29, 30; 3 *Tomlin's L. D.* 802.)

*Fifth.* The provisions of the revised statutes, respecting " Powers " and " Uses and Trusts," have reference exclusively to real estate, except as regards limitations of future or contingent interests in personal property, and in no way relate to the execution of " Powers " by married women in respect to personal property. (*Kane* v. *Gott*, 24 *Wend.* 661.)

☞ 1 *R. S.* 735, §§ 110, 115, power by grant or devise as to real estate, but not as to personal. ☜

*Sixth.* The power to make a will being regulated by the statute, and a married woman being expressly excluded from its provisions, any will made by her must necessarily be void. Even before the revised statutes, a married woman could not make a will, though she might have executed a testamentary

Moehring *agt.* Thayer.

paper in the nature of a will. But whether even that, with the then undefined powers of the surrogate's court, would have been admitted to probate, in analogy to the course adopted by the ecclesiastical courts in England, is at least doubtful. (2 *Bl. Com.* 12; 2 *Roper, Hus. and Wife,* 188; *Stone* v. *Forsyth, Doug.* 707, *n.;* 3 *Atk.* 166, *n.; Tappenden* v. *Walsh,* 1 *Phill.* 353; *Stevens* v. *Baywell,* 15 *Ves.* 156; 2 *R. S.* 60, § 21; 1 *R. L.* 367, § 16; 3 *Johns. Ch.* 523.)

☞ Words "no other" put in by legislature, not in report. 2 *Jarmin Wills, Appendix G.* 58, § 8; *Act* 1, *Vict. Ch.* 26, copied from our statute that gave right to make will as before. ☜

*Seventh.* Not only are married women excepted out of the statute of wills, whether they act with or without their husbands' consent, but the revised statutes, which require the husband to take out letters of administration on the property of the wife, and to give bonds as other persons for the payment of the debts of the wife, as well as the other provisions respecting her assets unadministered at the husband's death, have created rights in parties other than the husband, which would be affected by her will of personal property. (2 *R. S.* 75, §§ 29, 30; *Rev. Notes,* 3 *R. S.* 626; 2 *Story Eq.* §§ 1389, 1391.)

*Eighth.* Mr. Leo Wolf, the object of the insurance, having perished in the steamer President, as well as his wife and only child, the legal presumption is, either that he survived them, or that they all perished together. There was never, therefore, any room for the operation of the act of 1840, nor did the insurance money ever become payable to Mrs. Leo Wolf or her child, according to the terms of that act. (*Leboyne's case,* 3 *Hagg.* 748; *Taylor* v. *Diplock,* 2 *Phill.* 261; *Calvin* v. *Procurator General,* 1 *Hagg.* 92; 1 *Greenl. Ev.* 3d ed., §§ 29, 30; 4 *Burge's Com.* 11–29.)

☞ Interest vested in husband or his representatives— perished by a common calamity. (*Best on Presumptions,* § 141; 31 *L. L.; Lovelace Wills,* 266.) ☜

*Ninth.* Neither of the contingencies contemplated by the act of 1840 having occurred, the insurance money is payable to

Bouchaud *agt*. Dias & Furman.

the personal representatives of the husband, in the same manner as if that act had not been passed.

☞ *G. Wood*, for appellant, in reply.—Whether considered a will in equity—commonly called appointment in nature of a will—or under statute of 1840, it is same thing to us.

Policy reserves no interest in husband—presumption is the premium paid from the separate property of wife.—7 *Paige*, 1, 112, chancellor has held this doctrine himself.—Act of 1840 repeals nothing.

Object of act was to enable husband to provide for his wife to the exclusion of his creditors.—Good right at common law. Good under act of 1840. (19 *Vesey*, 418–19.)

*Not* a married woman in equity with reference to her separate estate—R. S. not apply to this case.—As to equitable property, she is a *feme sole*. (*Chickling on Equitable Estates*, 161.)

Should construe statute of wills as applying only to *legal* estates. ☜

DECISION.—*Decree affirmed—unanimously.*

NOTE.—On the ground "that the surrogate had no jurisdiction under the statute to take proof of the will of a married woman."

Whether a court of equity could give any effect to the paper was not decided. (No written opinions.)